**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERRI J. TENPENNY, | : | Case No. 1:05 cv 2248 |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | MEMORANDUM AND ORDER |
| | : | |
| Defendants. | : | |

This matter arises on the United States of America's (the "government" or "Defendants") motion for summary judgment (Doc. 16), which argues that Sherri J. Tenpenny's ("Plaintiff" or "Tenpenny") claims are procedurally and substantively flawed and should be denied.  The Plaintiff has filed a brief in opposition (Doc. 17) and the Defendants have filed a reply brief (Doc. 18).  Accordingly, this matter is ripe for resolution.  For the reasons outlined briefly below, the Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.  Plaintiff's claims against the individual Defendants – the Commissioner of Internal Revenue and Internal Revenue Service Agent Thomas Spencer – are **DISMISSED**.

I.      **BACKGROUND**

Though the instant case was filed in September of 2005, the undersigned initially became acquainted with the Plaintiff and her disputes with the Internal Revenue Service ("IRS") in July of 2003 when she filed a substantially identical case under 26 U.S.C. § 7433 ("§ 7433") against the United

States government.[1]  In so far as the Court's analysis of the present motion includes procedural events that occurred in connection with the Plaintiff's 2003 case, which ultimately was dismissed without prejudice, the Court's background review begins with the filing of that case.

On July 10, 2003, the Plaintiff filed a lawsuit in this Court alleging that the federal government – through IRS Agent Tom Spencer – illegally seized (or caused to be seized) certain financial assets that were either owned or controlled by her (the "2003 case").  The seizures[2] in question – seizures the government concedes occurred (it only disputes Plaintiff's claim that they were improper) – occurred in connection with the Plaintiff's alleged failure to satisfy certain federal tax obligations.  In the 2003 case, Plaintiff sought damages under § 7433, a statute that provides a federal cause of action to a taxpayer for harm suffered as a result of the government's use of unauthorized collection procedures.[3]

On September 25, 2003, this Court dismissed, without prejudice, the Plaintiff's 2003 case because she had not demonstrated to the Court that she had exhausted her administrative remedies – an express requirement for pursuing a § 7433 action.  Though she acknowledged that an administrative claim was pending, she provided no basis for the Court to conclude that it had jurisdiction over the

---

[1]     Unlike the present case, which names the Commissioner of Internal Revenue and IRS Agent Tom Spencer as Defendants, Plaintiff's 2003 case named only the United States government as a defendant.

[2]     The seizures were "levies" imposed pursuant to 26 U.S.C. § 6331.

[3]     The 2003 case was captioned Sherri Tenpenny v. United States, Case No. 1:03cv1346 (N.D. Ohio) and was assigned to the undersigned judicial officer. Initially, the Court concluded that the Plaintiff's complaint did not contain allegations that could be construed to set forth a valid federal claim and ordered Plaintiff to file an amended complaint or forfeit her purported claims.  On September 8, 2003, the Plaintiff filed an amended complaint.  Unless otherwise noted, and for ease of reference, the Court's references herein to the Plaintiff's 2003 case refer to the governing amended complaint.

2

subject matter of her federal claim *at that time*.  In sum, based only on the information it had before it as presented in plaintiff's original and amended complaints, the Court concluded that it did not have jurisdiction over the 2003 case because it appeared that the exhaustion requirement of § 7433 had not yet been satisfied.[4]  Though Plaintiff later filed motions for a new trial, to alter or amend judgment, and to amend the complaint, each of which was denied, she did not appeal the Court's dismissal of her case (or argue that the Court properly had jurisdiction), thereby waiving any challenge to the Court's ruling. Plaintiff's pending administrative claim, which was submitted to the IRS on June 12, 2003 (one month before she filed the 2003 case), was denied on September 23, 2003.[5]

On September 23, 2005, exactly two years after the IRS denied her administrative claim, the Plaintiff filed the present lawsuit, which asserts the same § 7433 claim she asserted in the 2003 case. The only material differences between the Plaintiff's 2003 case and this case are that:  (1) this case names the Commissioner of Internal Revenue and IRS Agent Tom Spencer as additional defendants; and (2) this case more thoroughly outlines the individual financial assets the Plaintiff believes were seized illegally.  In that regard, the complaint in this case notes that many of the assets that were seized actually are owned by various trusts, and not the Plaintiff.

## II.   DISCUSSION

In support of dismissal, the Defendants first argue that the Plaintiff's action is barred by the two-year statute of limitations applicable to § 7433 actions.  They argue that, *at the very latest*, the Plaintiff's cause of action "accrued" on June 12, 2003 when she filed her administrative claim with the IRS

---

[4]      It appears now, based on facts now provided by the government, that the Court, in fact, did have jurisdiction over the 2003 case (discussed below).

[5]      See Doc. 1 at ¶ 18.

3

because, at that time, she certainly knew of the facts underlying her subsequent claim that the government's seizures were improper.[6]  Accordingly, the Defendants argue that June 12, 2005 (*i.e.*, two years later) is the latest possible date the Plaintiff could bring her § 7433 action against the government based on the events alleged in the present complaint.

Plaintiff concedes that a two-year statute of limitations applies to her claims, and primarily argues that her § 7433 cause of action did not accrue until "this Court had jurisdiction to hear this action."[7]  She argues that the action accrued *at the earliest* on September 23, 2003 when the IRS denied her administrative claim.  Because she brought her claim within two years of that denial, Plaintiff argues that this case was filed within the two-year limitations period.  Alternatively, Plaintiff argues that equitable tolling should save her claims if the Court finds that her cause of action accrued prior to September 23, 2003., because this Court's own order implied that her administrative claim needed to be resolved before she could resort to this forum.

The Defendants next argue that the Plaintiff failed to demonstrate a claim on the merits because she has not presented any evidence to sustain her allegations that the IRS (through its representatives) recklessly, intentionally or negligently disregarded the notice procedures that must precede the seizures that occurred.  The Defendants argue that the Certificates of Assessments and Payments (*i.e.*, Form 4340s) that were sent to the Plaintiff are presumptive evidence of the government's compliance with the statutory notice requirements, and that it is now the Plaintiff's burden to present specific facts and evidence that notice was *not* provided.  Defendants argue that Plaintiff has failed to satisfy this burden

---

[6]     Seemingly, the same rationale would apply to the July 10, 2003 date when the Plaintiff filed her 2003 case in court; though the Defendants do not discuss that date as another potential "latest date."

[7]     See Doc. 17 at p. 3.

4

and her claim, therefore, cannot proceed.

Plaintiff's only response is that, for whatever reason, she never received the notice(s) upon which the government premises its burden-shifting argument. Citing correspondence sent to Agent Spencer *prior to* the seizures, Plaintiff further argues that she essentially requested a fairness hearing pursuant to 26 U.S.C. § 6330, which was never provided. See Doc. 16 at p. 6. Not surprisingly, the Defendants response to this alternative argument questions how the Plaintiff can claim not to have received any notice, while simultaneously claiming that her responses to whatever the government sent her qualifies as a request for a fairness hearing.

Third, the Defendants argue that the individual defendants – the Commissioner of Internal Revenue and IRS Agent Tom Spencer – should be dismissed because § 7433 actions can only be brought against the government itself and not its employees.

The Plaintiff responds with a single sentence argument that her action should be permitted to go forward against IRS Agent Tom Spencer because § 7433 is her "exclusive remedy for recovering damages" for the seizures he directed. Plaintiff cites no legal authority in support of her argument, nor does she rebut the authorities cited by the Defendants. Further, she does not even argue that her claim against the Commissioner of Internal Revenue is proper – she focuses only on IRS Agent Tom Spencer.

Finally, the Defendants argue that the claims relating to assets owned by various trusts, and not the Plaintiff, must be dismissed because the respective trusts are not named as plaintiffs in this case. In the event the trusts are appearing through the Plaintiff, the Defendants argue that they cannot prosecute their purported claims *pro se* because they are legal entities and not real persons.

In response, the Plaintiff briefly argues that, as a trustee *who owns a beneficial interest in the trusts*, she can prosecute claims on behalf of the trusts.

5

A. **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment, bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of Plaintiff's claim or by demonstrating "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a Defendant meets this burden, Tenpenny must "set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment Tenpenny must "make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The non-movant's evidence is to be believed, and "all justifiable inferences are to be drawn in h[er] favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). Tenpenny, however, must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

B. **Analysis**

While the Court agrees that the statute of limitations clearly expired prior to the filing of this case, for the reasons outlined below, the Court finds that the limitations period should be tolled as to

6

the United States government, but not the individual defendants.  Accordingly, the Plaintiff's claims against the individual defendants are dismissed as untimely.  Because the Court finds the government's remaining arguments are premature and cannot be resolved at this stage in the proceedings, the Plaintiff's claims against the United States government survive, for the moment.

### 1.    Statute of Limitations

Cases for civil damages brought pursuant to 26 U.S.C. § 7433 are subject to, among others, two critical limitations.  These two limitations relate to exhausting administrative remedies before the IRS and, thereafter, timely filing the action in court.  First, before a plaintiff can file a federal § 7433 action in court, she must "exhaust" certain administrative remedies.[8]  See 26 U.S.C. § 7433(d)(1).  Second, she must file her § 7433 action in Court within two years of the date the cause of action accrues.  See 26 U.S.C. § 7433(d)(3).  A § 7433 cause of action accrues when a plaintiff "has had a reasonable opportunity to discover all essential elements of a possible cause of action."  26 C.F.R. § 301.7433-1(g)(2).

Under certain factual scenarios, however, compliance with *both* of these limitations may appear difficult, if not impossible.  For example, a plaintiff who files her administrative claim with the IRS one month before the two-year statute of limitations is set to expire (*i.e.*, to comply with the exhaustion limitation) is compelled to file a federal lawsuit within the next month (*i.e.*, to comply with the two-year limitation period), despite the fact that it is unlikely that the IRS will resolve the administrative claim within a month's time.  In recognition of this overlap in a plaintiff's obligations, the regulations relating

---

[8]    As outlined by the applicable regulations, "exhaustion" of an administrative remedy can occur in a variety of ways and does not necessarily require that an administrative claim be resolved.  It is this unusual definition of the term "exhaustion" that has created confusion in this case.

to 26 U.S.C. § 7433 provide three ways to satisfy the exhaustion requirement.  Once that requirement is satisfied, a plaintiff may file a § 7433 action in court.  These options contemplate factual circumstances like that described above.  In pertinent part, the applicable regulation provides:

> (d)    *No civil action in federal district court prior to filing an administrative claim*
>
> > (1)    Except as provided in paragraph (d)(2) of this section, no action under paragraph (a)[9] of this section shall be maintained in any federal district court before the earlier of the following dates:
> >
> > > (i)    The *date the decision is rendered* on [an administrative] claim filed in accordance with paragraph (e)[10] of this section; or
> > >
> > > (ii)    The *date six months after the date an administrative claim is filed* in accordance with paragraph (e) of this section.
> >
> > (2)    *If an administrative claim is filed* in accordance with paragraph (e) of this section *during the last six months of the period of limitations* described in paragraph (g)[11] of this section, *the taxpayer may file an action in federal district court any time after the administrative claim is filed* and before the expiration of the period of limitations.

26 C.F.R. § 301.7433-1(d) (emphases added).

Stated in more simple terms, the above regulation provides that a plaintiff "exhausts" her administrative remedies and can file a federal § 7433 action in court:

(1)    once a decision is rendered on the administrative claim (assuming that occurs prior tp the expiration of the two-year limitations period);

(2)    once the administrative claim has been pending for six months; or

---

[9]    Paragraph (a) references a typical § 7433 action.

[10]    Paragraph (e) references the requirement that a plaintiff first file an administrative claim with the IRS.

[11]    Paragraph (g) references the two-year statute of limitations for § 7433 actions.

8

(3)     if the administrative claim was filed during the last six months of the two-year

limitations period, at any time after the administrative claim is filed.

The second and third options afford plaintiffs the ability simultaneously to pursue their administrative

claims and their federal lawsuits if that is necessary to their compliance with the two-year limitations

period for filing their § 7433 action in court.  The fact that an administrative claim is ongoing (or

"pending"), however, does not toll the statute of limitations period for filing a § 7433 action in court

– indeed, tolling is unnecessary in the light of the above options for satisfying the exhaustion

requirement.

A cause of action's accrual date, therefore, is a critical threshold question in any statute of

limitations analysis.  Such is the case here where the parties agree on the limitation period, but disagree

as to when the cause of action accrued, thereby starting the clock on the limitation period.  Defendants

argue that June 12, 2003 – when the Plaintiff filed her administrative claim with the IRS – is the *latest*

possible accrual date.   Plaintiff argues that September 23, 2003 – when the IRS denied her

administrative claim – is the *earliest* possible accrual date.

It is undisputed that on June 12, 2003 and July 10, 2003, the Plaintiff *formally* announced , both

to the IRS and to this Court, that she believed she could prove that the United States government

unlawfully had seized certain of her financial assets.  While it certainly is likely that Plaintiff's § 7433

action actually accrued well prior to either of these dates, certainly the latest possible date it accrued is

July 10, 2003 when the Plaintiff filed her 2003 lawsuit in federal court.[12]  Both of Plaintiff's filings

(certainly her federal lawsuit) required that she have a reasonable basis for the allegations they

_____

[12]     Indeed, as mentioned below, the government contends that the cause of action on
         Plaintiff's claim likely accrued far earlier, such that the Court would have had
         jurisdiction over the 2003 lawsuit under 26 C.F.R. § 301.7433-1(d)(2).

9

contained and demonstrate that the Plaintiff "had a reasonable opportunity to discover all essential elements" of her § 7433 cause of action.  Indeed, through her filings, she declared that she had discovered the elements of the cause of action she was asserting.  In this regard, the Court takes a slightly more liberal view than the Defendants, who contend that June 12, 2003 (the date the Plaintiff submitted her administrative claim to the IRS) is the latest possible accrual date.  In so far as either date yields the same result, however, the distinction is immaterial.

Plaintiff fails even to respond to the view that her filings on these dates evidence her opportunity to discover (and actual discovery of) the essential elements of her § 7433 cause of action.  Instead, she contends that her "opportunity to discover" did not occur until she learned of the IRS's denial of her administrative claim.  That argument demonstrates a fundamental misunderstanding of the law, however.  Plaintiff's "opportunity to discover" that she allegedly was harmed does not arise from the IRS's denial of her administrative claim that she was harmed.  Rather, it arises once events or information lead the Plaintiff to believe (or lead to a point when she *should* believe) that she was harmed.  Based on the facts asserted in support of her multiple assertions that § 7433 violations occurred, it is clear that the Plaintiff had "discovered" her cause of action, at least as of, the date on which she filed her first lawsuit to that effect.

Plaintiff alternatively states that her "right of action did not accrue until this Court had jurisdiction to hear this action."[13]  While not clearly saying so, she presumably bases this contention on the Court's order dismissing her 2003 action.  As outlined above, however, the Court's jurisdiction over the subject matter of a § 7433 action turns upon whether a plaintiff has *exhausted* her administrative remedies – which does not necessarily mean an administrative remedy must have been *resolved* prior

---

[13]        <u>See</u> Doc. 17 at p. 3.

10

to filing a lawsuit – and not upon whether the plaintiff has had ample opportunity to discover that a §
7433 cause of action may have occurred (*i.e.*, the legal test for "accrual").  In short, the date on which
a § 7433 action accrues and the date on which a federal court acquires jurisdiction over that action,
though related, are based on independent considerations.  Accordingly, the Plaintiff's argument to the
contrary is rejected.

Having determined the *latest possible* accrual date to be July 10, 2003, the statute of limitations
for the Plaintiff's § 7433 cause of action expired on **July 10, 2005**.  Because Plaintiff filed her case on
September 25, 2005 – over two months later – it is untimely.  See 26 U.S.C. § 7433.

### 2.      Equitable Tolling

Plaintiff alternatively argues that the limitations period – whenever it started – should be tolled
to permit her claims.  As support, she cites the Sixth Circuit's acknowledgment that the Supreme Court
repeatedly has held that equitable tolling should be permitted in *appropriate cases* so as to avoid *unjust*
results.  See Jones v. Transohio Savings Association, 747 F.2d 1037, 1039 (6th Cir. 1984) (emphasis
added).  Here, Plaintiff claims an injustice would result in the absence of tolling because this Court
dismissed her claim for lack of jurisdiction under circumstances in which it appears jurisdiction may
well have existed.  Specifically, the government explains that Plaintiff actually was informed of all facts
relating to the seizures well before the summer of 2003 such that her administrative filing in June, 2003
fell within six months of the end of the statute of limitations period for those claims.  If that is true, then
this Court would have had jurisdiction over that action under 26 C.F.R. § 301.7433-1(d)(2), making its
dismissal improper.  While, as explained below, it is impossible to determine from the parties'
submissions whether the Court indeed erred when it dismissed the 2003 action, the fact that it *may* have
done so, counsels in favor of resorting to equitable principles now.

11

*Under the unique circumstances of this case,* the Court agrees that an injustice will result if the Court strictly applies the two-year statute of limitations to *all* of the Plaintiff's claims.  For the reasons outlined below, the Court equitably tolls the statute of limitations to permit the filing of the Plaintiff's claims *against the United States government*.  The Court does not toll the limitations period, however, with regard to the Plaintiff's claims against the Commissioner of Internal Revenue and IRS Agent Tom Spencer.  Accordingly, the individual Defendants shall be dismissed from this case.

As a threshold matter, the Defendants argue that it is unclear whether equitable tolling is even permitted in § 7433 actions.  Though Defendants concede there is no clear directive one way or the other on this issue, they maintain that the Supreme Court and the Sixth Circuit are both "reluctant" to permit equitable tolling in tax cases and, to the extent permitted at all, to tend to significantly restrict its application.  In so far as the Court elects to toll the limitations period in this case largely because one of its *own prior orders* had effected its historical development, the Sixth Circuit's "reluctance," to the extent it exists, does not present a hurdle the Court's analysis cannot clear.  The Defendants admit that there is no clear precedent disallowing equitable tolling in § 7433 actions.  Accordingly, and certainly based on the premise for the Court's willingness to toll *in this case*, the Court does not decide whether equitable tolling is generally available in tax matters like these.

Simply stated, tolling is appropriate in this case because the Court's prior dismissal of the Plaintiff's 2003 action may have been wrong and could have been misleading to a *pro se* litigant such as Tenpenny.  As the Defendants concede in their briefs, and as is evident from the Court's statute of limitations analysis above, it is possible – indeed likely, given the fact the levies took place in 2001 – that the Court had subject-matter jurisdiction over the Plaintiff's 2003 case.  If the 2003 case was filed during the last six months of the limitations period, the exhaustion requirement would have been

12

satisfied, despite the Plaintiff's administrative claim having not yet been resolved.  While the Defendants argue that it was the Plaintiff's "obligation" in 2003 to inform the Court – either before or after the Court's 2003 order – that she had satisfied the exhaustion requirement (per the technicalities outlined in the applicable regulations), the Court does not agree that such an exacting requirement is appropriate under the circumstances of this case.

The Court's 2003 order states that because "the amended complaint does not contain any allegation, reference or assertion that Ms. Tenpenny complied with [the] jurisdictional prerequisite . . . the Court lacks subject matter jurisdiction." See Doc. 9 in 1:03cv1346.  While it is true that the amended complaint did not address whether the exhaustion requirement *had been satisfied*, it referenced the Plaintiff's administrative claim and stated that the claim was "pending."  Given that she referenced her pending claim, Plaintiff likely inferred from the Court's 2003 order that compliance with the exhaustion requirement (*i.e.*, "jurisdictional prerequisite") required a *resolution* of the pending administrative claim.  Such an interpretation is fair in light of the totality of the information presented to and by the Plaintiff.  While the public is charged with knowledge of the law, given the Court's less than clear language in its 2003 order, the Court finds that the Plaintiff reasonably may have been mislead and, as such, should not be completely doomed for her failure to develop expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations applicable in § 7433 actions.

Accordingly, the Court finds that, in order to prevent an injustice to the Plaintiff, equity requires that the limitations period be tolled for two years from the IRS's denial of the Plaintiff's administrative claim on September 23, 2003.  As such, *at least as to the defendants named in the Plaintiff's 2003 case*, the Plaintiff's claims filed on September 23, 2005 are timely.  Because the Plaintiff did not name the

13

Commissioner of Internal Revenue or IRS Agent Tom Spencer as defendants in her 2003 case, equitable tolling does not apply to save the Plaintiff's current claims against those Defendants. Further, the Plaintiff has not challenged the facially meritorious argument by the Defendants that § 7433 actions can only be brought against the government, but not its employees. Plaintiff's claims against the individual Defendants, therefore, must be dismissed.

### 3.    Plaintiff's Claims – Generally

On August 23, 2006, the Court notified the parties that it was: "inclined to believe that the statute of limitations should be equitably tolled" and that "[b]ecause this conclusion would require the Court to consider the Defendants' alternative arguments in support of dismissal" the parties were to refile motions for summary judgment and address the merits of those arguments. Unfortunately, rather than act on the invitation from the Court to further develop the "alternative arguments," the parties essentially recaptioned their motions to dismiss as motions for summary judgment. As such, the arguments addressing the substantive issues of Tenpenny's claims are, putting it generously, brief. Upon review, the Court finds that certain material issues of fact remain unresolved as to Tenpenny's substantive claims, and the government's motion for summary judgment must be denied.

As noted above, 26 U.S.C. § 7433 provides a federal cause of action to taxpayers for harm(s) suffered as a result of the government's use of "unauthorized" collection procedures. Here, Plaintiff alleges that the seizures (*i.e.*, levies) instituted against certain financial assets – whether owned by her or trusts in which she has a beneficial ownership interest – were "unauthorized" because the government failed to provide her with adequate notice and an opportunity for a hearing, as required by federal law. As outlined in the Defendants' motion, specific notice requirements must be satisfied before the government can levy a taxpayer's assets.

The central dispute, which the Court finds cannot be resolved based on the parties' submissions, is whether Tenpenny received adequate notice of the collection due process hearing.  All of Tenpenny's claims arise from her contention that she did not receive notice or the opportunity for a collection due process hearing prior to a levy on her assets.  The government argues that the Form 4340 Certificates attached to its motion for summary judgment are "*generally* regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made."  Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992) (emphasis added).  The IRS is *generally* correct.

The dispute in Gentry, however, centered whether a "summary record and certificate of assessments and payments prepared by the IRS are *adequate to establish a nexus between the plaintiffs and the underlying assessments*."  Id. at 558 (emphasis added).  The Sixth Circuit held that they were.  The narrow issue here, however, is whether the IRS provided adequate *notice* of Tenpenny's opportunity to be heard at a collection due process hearing.  The IRS argues that the Form 4340s are sufficient because they show that notice was sent to Tenpenny on two occasions (though they also reveal that both letters were returned).  Tenpenny argues that she "did not refuse delivery but for whatever reason she did not receive the notice."  See Doc. 16, at 5.

It is clear to the Court that Tenpenny's unsupported claim that she did not receive the notice "for whatever reason" likely would be insufficient in the face of *direct* evidence to the contrary by the government.  See, e.g., Williams v. Comm'r, 935 F.2d 1066, 1067 (9th Cir. 1991) ("A notice of deficiency is valid if it is mailed to the taxpayer's last known address, even if it is not received by the taxpayer.");Perry v. Internal Revenue Serv., No. 5:04-CV-266, 2004 WL 2051216, at *1 (E.D.N.C. Aug 05, 2004) ("Although the statutes require the IRS to notify plaintiffs by certified mail, they do not

require that plaintiffs actually receive the notifications."); Smith v. Comm'r, 250 F.Supp.2d 1266, 1270-71 (D.Or. 2003) (citations omitted) (finding that § 6330 "requires that to be effective, the IRS need only mail the notice and demand by certified or registered mail to the plaintiff's last known address. The statute does not require that plaintiff receive or accept the registered or certified notifications."); Stein v. Comm'r, T.C. Memo. 2004-124, 2004 WL 1147066 (T.C. May 24, 2004) (citations omitted) (concluding that IRS notices sent to the same address where plaintiff received 1099s from brokerages were valid despite being returned as "unclaimed;" finding, "the presumptions of official regularity and delivery justify the conclusion that respondent sent the statutory notices, and the U.S. Postal Service properly attempted to deliver the notices;" and that plaintiff "forfeited his opportunity to contest the underlying deficiencies in a proceeding in this Court under § 6330(d)"). The weight of authority, therefore, is clear: simply denying receipt of a notice from the IRS "for whatever reason" does not render that notice invalid.

The Form 4340s provided by the government, however, do not disclose the addresses to which any of the letters were sent. Thus, there remains the possibility that the letters were not sent to Tenpenny's last know address, as required by statute. The Court, therefore, finds that the Form 4340s submitted by the government, standing alone, are insufficient to resolve the issue of whether the notices sent by the IRS were adequate.[14] Binding precedent, however, holds that the government only need

---

[14] The Form 4340s, for example note that the first notice was returned as "undeliverable" and that the second notice was returned "refused/unclaimed." The difference is not explained. Given her general denial, this apparent irregularity, and because it would be difficult, if not impossible, for Tenpenny to prove that she did not receive a letter that was sent to an invalid address, she should be able to put the government to their proof on this issue (*i.e.*, require the government to show that the notices indeed were sent to a valid address). It appears to the Court, however, that the government only need provide evidence of *where* the notice was sent.

demonstrate that it *sent* the notices to Tenpenny's last-known address.  Wiley v. United States, 20 F.3d

222 (6th Cir. 1994) ("PS Form 3877 is highly probative evidence that the notice of deficiency was sent

by certified mail, and in the absence of contrary evidence is sufficient to establish that fact."); but cf.

Bentley v. Internal Revenue Serv., No. 02-cv-1391, 2002 WL 31274045, at *5-*6 (N.D. Ohio Sep 10,

2002) ("In the absence of evidence to the contrary, [IRS] transcripts are sufficient evidence to establish

compliance with Internal Revenue Code notice requirements) (collecting cases).  Accordingly, because

Tenpenny's entire complaint appears to be based on the IRS's alleged failure to provide her with notice

and an opportunity to be heard, the Court will entertain a future motion for summary judgment

addressing whether the notices were sent to a valid address and whether establishing that fact disposes

of Tenpenny's complaint.[15]

### 4.    Plaintiff's Claims – The Trust Assets Specifically

Defendants' final argument is that many of the Plaintiff's claims can be dismissed at this time

based on the pleadings alone – *i.e.*, that those that arguably belong to certain trusts and not the Plaintiff

–fail to state cognizable claims.  For the reasons briefly outlined below, the Court finds this argument

unpersuasive.

It is undisputed that many of the financial assets that the IRS levied, as acknowledged in the

Plaintiff's Complaint, belong to four trusts.[16]  The Defendants argue that the claims pertaining to these

_____

[16]     The trusts are identified as the (1) Asset Management Trust; (2) Business Trust;
(3) Charitable Trust; and (3) Vehicle Trust.

17

assets belong to the trusts alone and can only be brought by the trusts through counsel.[17]  In so far as no counsel has entered an appearance on behalf of the trusts, the Defendants argue that the claims pertaining to trusts' assets must be dismissed.

Plaintiff disagrees based on her unchallenged factual averment that she owns a beneficial interest in the trusts' assets.  Though it is not artfully crafted to distinguish itself from the Defendants' simple (and accurate) argument, Plaintiff argues that, despite the fact that a trust can only appear though counsel, she is entitled to proceed *pro se* on behalf of *her interest* in claims the trusts may have.  In other words, Plaintiff claims that she can pursue interests in the trusts' claims without pursuing the trusts' claims themselves.  This argument is not squarely addressed by the Defendants.

While the above distinction is slight, federal courts seem to agree that a *pro se* plaintiff can pursue claims *regarding a trust* if he is an actual beneficiary of the trust because, under those circumstances, he is representing his own interests and not the trust's interests.  The cases cited by both parties – some directly and some indirectly – support this view.

The Defendants cite C.E. Pope Equity Trust v. United States, 818 F.2d 696 (9th Cir. 1987), for the simple proposition that a trust can only appear through counsel.  Defendants ignore, however, that case's comment that "because [the plaintiff] is not the actual beneficial owner of the claims being asserted by the Trusts (so far as one can tell from the record), he cannot be viewed as a 'party' conducting his '*own* case personally' withing the meaning of Section 1654."  Id. at 697-98 (emphasis in original).  Clearly, this comment suggests that the court's decision to dismiss the plaintiff's claims

---

[17]     "Federal courts have uniformly held that 28 U.S.C. § 1654 does not allow corporations, partnerships, or other associations, *including trusts*, to appear in federal court except through a licensed attorney."  Amoco Prod. Co. v. Aspen Group, 25 F. Supp. 2d. 1162, 1166 (D. Colo. 1998) (emphasis added).

in that case may have been different had the plaintiff had (or owned) a beneficial interest in the trust's claims.

Plaintiff cites Amoco Prod. Co. v. Aspen Group, 25 F. Supp. 2d. 1162 (D. Colo. 1998), as further support. After acknowledging that federal courts uniformly agree that trusts can pursue their claims only through counsel, the Amoco court similarly pointed out that the plaintiffs in that case could not appear *pro se* in defense of "beneficiary interests" because, though they were trustees, *they did not have any beneficial interest in the trust*. Id. at 1167. Again, had the Amoco plaintiffs had a beneficial interest in the trust – or at least alleged to have had such an interest, depending on when the court considered the issue – it is evident that the court would have reached a different conclusion.

Cases independently identified by the Court are in accord with the implications of C.E. Pope and Amoco. For example, in Kitras v. Town of Aquinnah, 379 F. Supp. 2d 81 (D. Mass. 2005), the district court denied a motion to reconsider its grant of a motion to dismiss. The court stated, however, that it would have been inclined "to allow a trustee who is also the sole beneficiary of a trust to represent that trust *pro se*." Id. Similarly, the district court in Willoughby v. Rubin, 1999 U.S. Dist. LEXIS 3055 (D. Ariz. 1999), stated that a trustee "may bring an action regarding a trust only if he or she is an actual beneficiary of the trust because only then is the trustee, as beneficiary, representing his or her own interest." See also United States v. Stock, 2002 U.S. Dist. LEXIS 9565 (D. Idaho 2002) (stating that "if the *pro se* litigant is a beneficiary of the [trust], then it is possible for him or her to represent the trust"); United States v. Parkinson, 2001 U.S. Dist. LEXIS 1415 (D. Idaho 2001) (stating that if a trustee is a beneficial owner of the claim being asserted by a trust, he is a "real party in interest" and can proceed pro se with the trust's claims).

What is unclear from these cases is the manner by which a plaintiff who owns (or alleges to

own) a beneficial interest in a trust pursues claims "relating to the trust."  It is clear, however, that such claims may be pursued.  The parties, moreover, have devoted less than a page of briefing to the argument and, apparently, conducted little discovery on the issue.  Having well-pleaded allegations by the Plaintiff that she owns a beneficial interest in the four trusts involved here, the Court cannot deny claims relating to those trusts at this stage in the proceedings.  Perhaps after additional discovery, the parties will be in a better position, if necessary, to address the factual issue of the Plaintiff's "beneficiary" status, as well as the legal issue relating to the manner by which a plaintiff asserts a beneficial interest claim relating to a trust.  In any event, the Court rejects the Defendants' argument that the claims relating to the trusts must be dismissed because the trusts have not appeared through counsel.  Clearly, the issue presented is more complex.

### III.    <u>CONCLUSION</u>

For the reasons outlined briefly below, the Defendants' motion for summary judgment is **<u>GRANTED in part</u>** and **<u>DENIED in part</u>**.  As to the individual Defendants – the Commissioner of Internal Revenue and Internal Revenue Service Agent Thomas Spencer – the motion is granted and the claims against those parties are **<u>DISMISSED</u>**.  As to the remaining Defendant – the United States government – the motion is denied; all of Plaintiff's claims survive (at this stage of the proceedings).

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: May 14, 2007**

20